Curia, per

O’Neall, J.
My decision, which is copied in the brief, was written on the back oí the suggestion, and does not pretend to set out the facts. It referred to what appeared in the suggestion, and the answer of the Ordinary. It is hence necessary, that I should state the facts upon which our judgment turns.
Soon after the death of Mrs. Mayrant, her will was proved, and the Ordinary ordered that administration cum testamento annexo should be granted to Mrs. Simmons, the sister of the deceased, and her next of kin, on her giving bond in the sum of $60,000, with two good securities, residing in Greenville district. The mandamus was applied for to correct the qualification of the residence of the securities, and to compel the grant of administration without any such condition. The Ordinary answered, admitting the order which he had made, but stated that he had become *103 subsequently satisfied that Samuel Mayrant was executor according to the tenor of Mrs. Mayrant’s will, and that he had, therefore, committed to him letters testamentary, and revoked the grant of administration to Mrs. Simmons. Under this state of the facts, it is necessary to enquire, 1st. whether Samuel Mayrant is executor 1 and, then, 2d. if he be not, whether mandamus will lie 1
1st. I have considered this question, here with more care, than I had the opportunity of doing on the circuit, and the result is a most deliberate conviction of the correctness of the decision below. To constitute one an executor, according to the tenor, it is necessary that he should have “the charge and office, or the right of an executor.” In Swinburne, on Wills, 350. 1st Williams on Executors, 123, instances are given of an executor, according to the tenor. All of them arise from making the person the residuary legatee. (That was necessarily the case, from the fact that in England the executor, by virtue of his office, took the residue. But there is great room to doubt, whether the same result would follow here, when the executor has no such rights. In Swinburne, 358, it is advised that if the words be indifferent to make an executor or universal legatary, it is best to take the latter, and let administration be granted. It is, however, better to test this case by the principle extracted from Williams, and which I have already laid down, 1st. Does the will commit io Samuel Mayrant the charge and office of an executor 1 To me, it is plain, it does not. It was intended that he and Mrs. Simmons should be testamentary guardians, and to Mr. Mayrant was intended to be committed more especially the charge of the sons ; the oldest, it was directed should go to school for a limited time, and then to embark in such business as he might select, with the concurrence of his uncle, S. Mayrant; the youngest was left to the discretion of his uncle and aunt, S. Mayrant and Mrs, Simmons. So far, there is nothing like the charge or office of an executor, it (the will) directs, in these provisions, how the supposed guardians should act. Then the will directs that the sons should have a good education, and as much as was a necessary outfit for pursuing their profession, or business, which they might select, and the balance to be divided *104 among the daughters ; and the testatrix declared that she wished “this to be carried into effect, according to the judgment of her brother-in-law, Samuel Mayrant.” Do these last provisions give him the charge or office of an executor ? Certainly not. He is to say how much will be a suitable outfit for the boys, after their education has been completed, and the balance is to be divided between the daughters. He is not to divide the property. It is merely, that this, as well as the outfit should be arranged according to his judgment. That is, he should advise how the property could be best divided. I look upon Mr. May-rant, as the mere adviser in the ultimate administration of the estate.
2d. Does the will cast upon him the rights of executor 7 There is nothing which shews that he was to have the control of the property. He is not directed to sell or divide it. He is not directed to pay debts. Indeed, there is nothing in the will, which, in the remotest degree can be considered as placing him in the stead of the executrix, and conferring upon him her rights. To be an executor, his authority must arise from the will, and unless there be a clear intent to constitute the person claiming to be so regarded the executor, he never ought to be declared to be so, according to the tenor. I confess, on referring to the 4th sec. of the Act of 1839, page 40, it may well be doubted, whether this whole doctrine of an executor, according to the tenor, is not thereby exploded. It provides that, “when a deceased has left a will, in writing, without appointing an executor or executors, therein,” it shall be the duty of the Ordinary to grant letters of administration, with the will annexed. How, after this provision, the Ordinary can hunt up, through a will, a constructive executorship, is difficult to conceive. It would seem to be enough to read the will, and if no executor is appointed, to grant administration. This would be a plain, practical rule for the guidance of Ordinaries, who are generally very little qualified to say whether there is an executor according to the tenor.
3d. The next general question is, whether mandamus will lie ? There being no executor, it follows, that the order granting administration to Mrs. Simmons, was impro *105 perly revoked, and that she is entitled now to it, and it may be, that the condition that her securities should live in Greenville district is illegal, and should be struck out. How is she to compel the Ordinary to grant her the administration'? There is no doubt, that in England mandamus would be the remedy. In the King against Dr. Hay, 2d Wm. Black, 640, the court ordered a mandamus to the Judge of the Prerogative Court, to grant administration to the next of kin, notwithstanding there was a suit pending. So soon as the title to administration is clear of difficulty, then there is generally, according to the principles of the common law, a plain right to have a mandamus, to compel the Inferior Court, (if it refuses to act) to grant it. When there is no other appropriate legal remedy for the enforcement of a legal right, mandamus is the proper remedy. State vs. Bruce et at. 3d Brev. Rep. 270. It must be an appropriate, as well as a legal remedy, to oust the remedy by mandamus. In this State, it is said the parly, whose right of administration is denied by the Ordinary, or delayed by improper conditions, may appeal. The Act of 1839, sec. 13, provides, if any person shall think himself aggrieved by “any judgment, sentence, decree, denial or order of the Court of Ordinary, it shall and may be lawful for such person to appeal, by filing within twenty days his ground of appeal, and serving the opposite party or attorney with a copy thereof.” In another part of the same clause, the party appealing is directed to file in the Clerk’s office a suggestion, setting out “the judgment, sentence, decree, denial, or order,” and his grounds of appeal, and thereupon to post the usual thirty day rule to plead, and an issue in law, or in fact, is there directed to be made up, according to the nature of the case. These provisions plainly point to a case between party and party, in which there may be an appeal. It does not apply to a question of right, in which one party is alone concerned, as Mrs. Simmons is. But, I apprehend, a doubtful right of appeal, does not destroy a plain common law right. For the right to compel the Ordinary to grant administration to the next of kin, by mandamus, is essential to the preservation of estates. It cannot be, that an estate is to be unrepresented, while an appeal is to be carried up to the next Circuit *106 Court, and decided. The mandamus, without any such delay, can be obtained from any of the Judges at Chambers, and the administrator admitted to his rights. I think, therefore, Mrs. Simmons had no other appropriate legal remedy, and hence, that she is entitled to have the writ of mandamus. It has not been denied, that, that part of the Ordinary’s order, committing administration to Mrs. Simmons, which requires the securities to live in Greenville district, is illegal. The Ordinary is to take good security for administration; but he has no right to make residence a part of the qualification of the securities.
The motion to reverse the decision below, is dismissed.
Evans, J. concurred.